UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 14-226 (BAH) |
| SAMUEL I. KAPLAN, | Chief Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM AND ORDER**

Defendant Samuel I. Kaplan was sentenced in 2010 on his guilty plea to a single count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(5)(b) and 2256(8)(A), after a forensic examination of his computer "found more than 10 and less than 20 images of child pornography." *United States v. Kaplan*, Mem. and Order at 2, ECF No. 10. The court in the Eastern District of Virginia sentenced defendant to 46 months' imprisonment, at the highest-end of the applicable guideline sentencing range, and to 180 months (or 15 years) of supervised release, far higher than the mandatory minimum of five years but less than the discretionary maximum lifetime term of supervised release. Judgment, Statement of Reasons at 7, ECF No. 1-2. Now, having successfully completed his period of incarceration and over seven years of his 15-year term of supervised release, defendant—who is 76 years old and has been diagnosed with "high grade, extensive and highly aggressive, advanced prostate cancer"—seeks for the second time early termination of supervised release, pursuant to 18 U.S.C. § 3583(e)(1), based upon his exemplary supervision record and deteriorating medical condition. Def.'s Mot. for Early Term. of Supervised Release ("Def.'s

1

Mot."), at 2 & Attach. A (Letter from Dr. Adam R. Metwalli, Chief of Urology Division at Howard University Hospital ("Medical Letter")), ECF No. 11.

Although the Probation Office concedes that "this case does meet the criteria for early termination," Probation Office Mem. ("Aug. 2021 PO Mem."), at 2, ECF No. 12, and the government acknowledges that "[d]efendant has laudably been compliant with his release conditions," Gov't's Opp'n to Def.'s Second Mot. for Early Term. of Supervised Release ("Gov't's Opp'n"), at 3, ECF No. 13, both the government and Probation Office oppose defendant's motion, *see* Aug. 2021 PO Mem. at 2; Gov't's Opp'n at 1.

Early termination of defendant's supervised release term is warranted.  Defendant's prostate cancer "had already metastasized at the time of diagnosis" in late 2019 and his current "condition is terminal and progressing," thus rendering supervised release particularly burdensome as his disease worsens and quality of life further deteriorates.  *See* Medical Letter.  Accordingly, and as explained more fully below, defendant's motion is **GRANTED**.

I.      BACKGROUND

Having already described the facts of this case in detail, *see Kaplan*, Mem. and Order at 1-3, only the relevant factual and procedural history is reviewed here.  *See also* Statement of Facts, *United States v. Kaplan*, Crim No. 10-cr-186 (E.D. Va.), ECF No. 6.

As noted, on August 27, 2010, defendant was sentenced in the Eastern District of Virginia to 46 months' imprisonment and 180 months (fifteen years) of supervised release after pleading guilty to one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(5)(b) and 2256(8)(A).  *Kaplan*, Mem. and Order at 1-2.  Defendant began serving his term of supervision on December 26, 2013, *id.* at 3, and thus has now served, without any infractions, more than half of his supervised release term, which is set to expire on December

25, 2028.  *See id.*; *see also* Gov't's Opp'n at 3 (noting that defendant "has laudably been compliant with his release conditions so far").[1]  Defendant began treatment for prostate cancer in late 2019.  *See* Medical Letter; *see also* Def.'s Mot. at 2.

On January 14, 2020, defendant filed his first motion for early termination of supervised release, which was accompanied by 21 letters of support from community members.  *See* ECF No. 5.  As with the instant motion, both the government and Probation Office objected to defendant's first request for early termination.  *See Kaplan*, Mem. and Order at 1.  Nevertheless, the probation memorandum submitted at that time explained that defendant had "successfully completed sex offender treatment . . . is subject to polygraphs, daily computer monitoring, and random searches upon reasonable suspicion," and that there "have been no indications of inappropriate internet[,] computer access, or activities." Probation Office Mem. ("Jan. 2020 PO Mem."), at 2, ECF No. 7.  Defendant's first motion for early termination was subsequently denied on February 20, 2020.  *Kaplan*, Mem. and Order at 7.  This Court highlighted several factors in defendant's favor, including that he had completed six years of supervision without infraction, "has a stable residence and has plainly, based on the submission of multiple letters on his behalf, integrated himself as a valuable member of the community," but found that he had "served less than half his full term of supervised release," which weighed against his motion for early termination.  *Id.* at 5-7.

Defendant's medical condition has deteriorated significantly since early 2020.  As part of the treatment against his metastasizing prostate cancer, defendant "underwent surgical castration" and "requires oral hormonal medication four times per day."  *See* Medical Letter. Defendant's urologist explains that "[t]he natural history of this disease indicates that

---

[1]  Supervision of defendant was transferred to this District in November 2014 and assigned to the undersigned Chief Judge on March 31, 2017.  *Kaplan*, Mem. and Order at 1 n.1.

3

[defendant's] quality of life will continually decrease as the disease progresses and as the toxicity of therapy accumulates." *Id.* Given that his "circumstances have changed dramatically since" early 2020, defendant filed a second motion for termination of his supervised release term on August 16, 2021. Def.'s Mot. at 2. Defendant argues that because of the treatment he "has undergone, and will continue to undergo, and the fact that the condition is terminal and progressing[,] there is no need to keep him on supervised release to provide either deterrence or protection to the public." *Id.* at 3. The Court agrees.

## II.   ANALYSIS

Defendant seeks early termination of his fifteen-year term of supervised release under 18 U.S.C. § 3583(e)(1), which authorizes termination of a supervision term "at any time after the expiration of one year of supervised release" if the seven factors set out in § 3553(a) are considered and termination "is warranted by the conduct of the defendant [on supervision] and the interest of justice." 18 U.S.C. § 3583(e)(1).

Whether granting or denying a motion for early termination of supervised release, a district court must explain its consideration of the relevant § 3553(a) factors, unless the reasons for denying or granting the motion "are apparent from the record." *United States v. Mathis-Gardner*, 783 F.3d 1286, 1289-90 (D.C. Cir. 2015); *see also United States v. Harris*, 258 F. Supp. 3d 137, 143 (D.D.C. 2017) (Howell, C.J.). The relevant factors under § 3553(a) are therefore addressed first below before determining if early termination of defendant's supervision is in the interest of justice.

### A.   Consideration of Applicable Factors Under 18 U.S.C. § 3553(a)

Under § 3553(a), the Court must consider the following seven factors when evaluating a request for early termination of supervised release: (1) the nature and circumstances of the

4

offense and defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3583(e) (authorizing modification of supervised release "after considering the factors set forth in" § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7)).  Importantly, "the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" is *not* among the § 3553(a) factors to be considered in determining whether to modify a term of supervision.  18 U.S.C. § 3553(a)(2)(A); *see* U.S. Sentencing Comm'n, Federal Offenders Sentenced to Supervised Release (July 2010) ("Supervised Release Report") at 9 ("The legislative history indicates that section 3553(a)(2)(A) was not included for consideration under 18 U.S.C. § 3583(c) because the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than punish them.").

Therefore, in considering these factors, district courts must recognize that supervised release "serves an entirely different purpose than the sentence imposed under § 3553(a)," *Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011), and "fulfills rehabilitative ends, distinct from those served by incarceration," *United States v. Johnson* (*Johnson I*), 529 U.S. 53, 59 (2000); *see also Johnson v. United States* (*Johnson II*), 529 U.S. 694, 708-09 (2000) (specifying that the "congressional policy in providing for a term of supervised release . . . is to improve the odds of a successful transition from the prison to liberty").  Indeed, the

Supreme Court has highlighted the congressional "aim[] . . . to use the district courts' discretionary judgment to allocate supervision to those release[d] who need[] it most." *Johnson II*, 529 U.S. at 709. "The relevant factors under § 3553(a) are, consequently, evaluated mindful of the Supreme Court's clear articulation of the purpose of supervised release and the district court's discretion to limit terms of supervised release to those who need it." *Harris*, 258 F. Supp. 3d at 145 (internal quotation marks and alterations omitted).

Here, the sixth and seventh factors—the need to avoid sentencing disparities and the need to provide restitution, respectively—are of limited relevance to defendant because the "factor of avoiding unwarranted sentencing disparities . . . would generally undermine the case specific inquiry required in evaluating a motion for early termination of supervised release," *id.*, and because defendant has no restitution obligations.

Consideration of the first factor—the nature and circumstances of the offense and defendant's history and characteristics—"confirms the seriousness of the defendant's offense conduct," as this Court previously acknowledged while evaluating his first motion for early termination. *Kaplan*, Mem. and Order at 5. "Not only did the defendant possess [between ten and twenty images of] child pornography but he also initiated online communications with self-identified minors and engaged in sexually explicit email messages, which included the exchange of nude images." *Id.* Since then, however, defendant's activities following his incarceration term reveal defendant's "exemplary conduct while on supervised release" and substantial support among members of the community for termination of his supervision. Def.'s Mot. at 2; *see also Kaplan*, Mem. and Order at 6 (noting defendant's "extensive volunteer work" while on supervised release, "especially through Citizens United for the Rehabilitation of Errants"). As noted, defendant is now 76 years old, has served more than

6

half of his fifteen-year term of supervised release without incident, and is undergoing aggressive treatment for metastasizing, terminal prostate cancer. Crediting defendant's post-incarceration conduct is especially relevant because "the need . . . to reflect the seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A), is simply not a factor to consider when determining whether early termination of supervision is warranted. *See id*. § 3583(c). Instead, the general focus of supervised release is forward looking and centered on defendant's trajectory after incarceration. *See Johnson I*, 529 U.S. at 59 ("Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

As for factors two and three—the important need to provide adequate deterrence of criminal conduct and to protect the public from further crimes—the defendant has already served his 46-month prison sentence and almost eight years under supervision. The severity of this punishment provides an adequate deterrent to others. Regarding the need to protect the public from additional criminal conduct by the defendant, the length of time defendant has spent under supervision, without infraction, is highly probative.[2] Since his release from prison in 2013, defendant has complied with all terms of supervision and shown an exemplary ability to reintegrate himself into the local community in and around Washington D.C. *See* Def.'s Mot. at 2; Gov't's Opp'n at 3; *see also Kaplan*, Mem. and Order at 5-6. His intensive supervised release program has included sex offender treatment, polygraph tests, daily computer monitoring, and random searches upon reasonable suspicion. *See* Jan. 2020 PO Mem. at 2. Defendant has also undergone "surgical castration as part of his treatment" for

---

[2] A Sentencing Commission analysis of supervised release recidivism rates found that "[v]iolations of conditions of supervision that result in revocation on average occur early in the supervision process," noting that, "in 2006, offenders whose supervision was revoked . . . served an average of only 17 months before revocation." Supervised Release Report at 63.

prostate cancer. *See* Medical Letter. The government agrees that defendant "has laudably been compliant with his release conditions," but contends that "the conditions of supervised release imposed, including monitoring use of electronic devices, are specifically tailored to detect and prevent commission of this same sort of electronic-based child exploitation offense." Gov't's Opp'n at 2-3. In light of defendant's full compliance with his conditions of release for almost eight years, exemplary lifestyle choices and community service since incarceration, and deteriorating health, the Court finds that his risk of recidivism is low and that the need of effective deterrence will not be furthered by requiring defendant to serve his full fifteen-year term of supervision. Factors two and three thus support early termination of supervised release.

As to factor four—the need of providing defendant with educational or vocational training, medical care, or other correctional treatment—defendant does not appear to have continuing rehabilitative needs. *See* Aug. 2021 PO Mem. To the contrary, the Probation Office reported that, by early 2020, defendant had "successfully completed sex offender treatment." Jan. 2020 PO Mem. at 2. This factor thus also weighs in favor of early termination of supervised release.

Finally, as to the fifth factor—the applicable sentencing guidelines range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission—the Probation Office maintains that "guidance from the Guide to Judiciary Policy does not support early termination for sex offense cases." Aug. 2021 PO Mem. at 2. The Probation Office nonetheless "recommends the Court [to] consider the factors set forth in 18 USC § 3553(a); specifically, the nature and circumstances of the offense." *Id.* As the foregoing analysis illustrates, the Court has done just that and concluded that the § 3553(a) factors favor

early termination of supervised release. In fact, as already noted, the Probation Office concedes that defendant "meet[s] the criteria for early termination." *Id.* Accordingly, the § 3553(a) factors, taken together, warrant grant of defendant's motion.

### B. Consideration of Interest of Justice Under 18 U.S.C. § 3583(e)(1)

Besides considering the § 3553(a) factors, the Court must also be "satisfied" that early termination of supervised release "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The Court is so satisfied here in light of defendant's fully compliant almost eight years on supervision, including completion of sex offender treatment and being subject "to polygraphs, daily computer monitoring, and random searches," which have resulted in "no indication[] of inappropriate internet or computer access." Jan. 2020 PO Mem. at 2. Meanwhile, defendant's medical "condition has, unfortunately, taken a serious turn for the worse" since he was diagnosed with prostate cancer in late 2019. Def.'s Mot. at 2. In these circumstances, the Court concludes that early termination of his supervised release term is in the interest of justice.

### III. ORDER

Accordingly, upon consideration of the defendant's Motion for Termination of Supervised Release, ECF No. 11, the government's Opposition to Defendant's Second Motion for Early Termination of Supervised Release, ECF No. 13, the related memoranda in support and opposition, the entire record in this case, and all of the relevant statutory purposes of supervised release according to 18 U.S.C. §§ 3553(a), 3583(e)(1), it is hereby

**ORDERED** that the defendant's motion is **GRANTED**; and it is further

**ORDERED** that the defendant's term of supervision shall be terminated early, effective this day.

**SO ORDERED**.

Date: October 4, 2021

$\qquad\qquad\qquad\qquad$
BERYL A. HOWELL
Chief Judge